Eiko Uehara ROSE, Plaintiff,

v.

Robert S. McNAMARA, Defendant.

Civ. A. No. 998–65.

United States District Court
District of Columbia.

March 21, 1966.

Stuart H. Robeson, Roger E. Brooks, Washington, D. C., for plaintiff.

John W. Douglas, Asst. Atty. Gen., David G. Bress, U. S. Atty., Harland F. Leathers, Robert J. Wieferich, Dept. of Justice, Washington, D. C., for defendant.

GASCH, District Judge.

This cause came on for hearing on plaintiff's complaint under the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. Plaintiff has moved for summary judgment, and the Government has moved for judgment on the pleadings.

It appears that the facts are as follows: Plaintiff, a native Okinawan, was married to a United States citizen and, thus, has become a citizen of this country. She is the proprietress of a business known as the Tea House August Moon on the island of Okinawa. The pleadings reflect that plaintiff was convicted of violating an organic tax law promulgated by the high Commissioner of the Ryukyu Islands. After plaintiff's indictment by a grand jury, she was tried and convicted by a petit jury and the court sentenced her to pay a fine of $8,000. Her appeal was duly taken to and denied by the United States Civil Administration Appellate Court for the Ryukyu Islands. No provision is made for further appellate action by her. There is no dispute as to these material facts.

Plaintiff's counsel seeks a declaration that the above-described proceedings are invalid on the ground that the courts of the Ryukyu Islands, as presently constituted under an executive order of the President,[1] have no criminal jurisdiction over a United States citizen. The specific relief sought by the complaint is a declaration that the conviction is null and void.

Following the Treaty of Peace between the United States and Japan, jurisdiction over the Ryukyu Islands was established under the interim control of the United States pending ultimate transfer to a trusteeship as provided by the United Nations Charter. By the executive order heretofore mentioned, courts essentially comparable to those established under the jurisdiction of the United States in its states and territories have been established in the Ryukyu Islands. The current criminal practice of these courts includes grand juries and petit juries.[2] The judges of these courts are appointed pursuant to power delegated by the President.

Plaintiff takes the position that the failure of Congress to legislate in this area invalidates this system of jurisprudence established by the executive order as it applies to a United States citizen. Concomitant with this assertion is a denial of Presidential authority to submit a United States citizen to criminal jurisdiction in a court established by executive order.

At the outset, the Court recognizes that the absence of congressional legislation is not in and of itself controlling, for the exigencies of the international situation may be such that it would be inappropriate for Congress to pass legislation concerning the Ryukyu Islands as if they were territorially a part of the United States. It has long been recognized that in the field of foreign relations that the important, complicated, delicate and manifold problems incident thereto are confided solely to the judgment and discretion of the President.[3] During the temporary occupation of these Islands, it would be singularly inappropriate to expect Congress to establish a permanent judicial setup comparable to that which exists in islands under the permanent

---

1. 22 Federal Register 4007 et seq.

2. See discussion of In re Nicholson, H.C. 141–61, infra.

3. United States v. Curtiss-Wright Export Co., 299 U.S. 304, 319, 57 S.Ct. 216, 81 L.Ed. 255.

control of the United States.[4] This situation is not novel. In Madsen v. Kinsella, 343 U.S. 341, 72 S.Ct. 699, 96 L.Ed. 988, the Supreme Court upheld the jurisdiction and authority of similar courts which were established by an executive order in the United States occupied zone of Germany. In *Madsen*, the petitioner was convicted of murder in violation of the German Criminal Code in a court known as the United States Court of the Allied High Commission for Germany. As in the instant case, the offense and trial took place after the cessation of hostilities and during a period of military occupation. Plaintiff's counsel contends that the jurisdiction of such a court expires upon the cessation of hostilities. It is clear that in *Madsen* the Supreme Court specifically repudiated this argument.

"In the absence of attempts by Congress to limit the President's power, it appears that, as Commander-in-Chief of the Army and Navy of the United States, he may, in time of war, establish and prescribe the jurisdiction and procedure of military commissions, and of tribunals in the nature of such commissions, in territory occupied by Armed Forces of the United States. *His authority to do this sometimes survives cessation of hostilities.*" [5]

The jurisdiction of such courts has been repeatedly upheld by the Supreme Court.[6]

Plaintiff's counsel relies upon Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed. 2d 1148, wherein the Supreme Court held that trial of a United States citizen by a military court which did not provide cer-

tain constitutional safeguards was unconstitutional. Mr. Justice Black repudiated reliance on the "Insular Cases" which arose at the turn of the century.[7] Similarly, this Court has previously had occasion to examine the court system of the Ryukyu Islands. In the Case of In re Nicholson, H.C. 141–61, Judge McGarraghy found that the denial of a jury trial to a United States citizen, tried before the courts of the Ryukyu Islands, violated the petitioner's constitutional rights. It is apparent that the court procedures which resulted in Judge McGarraghy's decision have since been changed. In the instant case, plaintiff was accorded a grand jury and a petit jury; she had the benefit of counsel throughout the proceedings; and the record in no way reflects a denial of constitutional rights resulting from the operation of the courts of the Ryukyu Islands.[8]

Although plaintiff did not rely on it, United States v. Bowman, 260 U.S. 94, 43 S.Ct. 39, 67 L.Ed. 149, raises a related issue. In *Bowman*, petitioner and others were convicted in the United States District Court for the Southern District of New York for the violation of a penal provision of the United States Code. Plaintiff might have argued that she was entitled to a trial in a Federal court similar to the trial accorded Bowman.[9] However, in *Bowman*, the Supreme Court recognized that other forums would have jurisdiction over Bowman.

"Clearly the *locus* of this crime as intended by Congress is in a foreign country, and certainly the foreign country in which he discharges his of-

---

4. Chief Justice Marshall, describing the power and origin of legislative courts of the United States as distinguished from Article III courts, in American Insurance Co. v. Canter, 26 U.S. (1 Pet.) 511, 7 L. Ed. 242, clearly stated that the power to establish legislative courts relates only to territory belonging to the United States. Id. at 542.

5. 343 U.S. at 348, 72 S.Ct. at 703 (emphasis supplied).

6. Duncan v. Kahanamoku, 327 U.S. 304, 66 S.Ct. 606, 90 L.Ed. 688; Santiago v. Nogueras, 214 U.S. 260, 29 S.Ct. 608, 53

L.Ed. 989; Neely v. Henkel, 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448; Mechanics & Traders Bank v. Union Bank, 22 Wall. 276, 22 L.Ed. 871; The Grapeshot, 9 Wall. 129, 19 L.Ed. 651; Cross v. Harrison, 16 How. 164, 14 L.Ed. 889.

7. The leading case was In re Ross, 140 U.S. 453, 11 S.Ct. 897, 35 L.Ed. 581.

8. Cf. Wilson v. Girard, 354 U.S. 524, 77 S.Ct. 1409, 1 L.Ed. 1544.

9. The District Court for the Southern District of New York was the first port of entry.

ficial duty could not object to the trial in a United States court of a United States consul for crime of this sort committed within its borders." [10]

It is ·noteworthy that, whereas Bowman was found guilty of violating a provision of the United States Code, plaintiff herein was found guilty of violating an organic law intended for the use and benefit of the government established pursuant to the Treaty with Japan.

 The Court finds that the system of courts of the Ryukyu Islands, as they currently operate, do not possess unconstitutional features.[11] The Court further finds that these courts were validly constituted by executive order of the President and have jurisdiction over a United States citizen as to crimes occurring within the Ryukyu Islands.[12] Accordingly, plaintiff's motion for summary judgment is denied and defendant's motion for judgment on the pleadings is granted.

Counsel will prepare an appropriate order.

10. 260 U.S. at 99, 43 S.Ct. at 41; Madsen v. Kinsella, supra.

11. Cf. Reid v. Covert, supra.

12. Madsen v. Kinsella, supra.